**Stevan Wayne MacLAIRD, on his own behalf and on the behalf of all other persons similarly situated, Plaintiffs,**

v.

**Darrell WERGER, Sheriff; and Goshen County, Wyoming, Defendants.**

C85–0158–B.

United States District Court,
D. Wyoming.

Sept. 12, 1989.

See also, 633 F.Supp. 286.

Stephen L. Pevar, Staff Counsel, Mountain States Regional Office, ACLU, Denver, Colo. and Daniel G. Blythe, Cheyenne, Wyo., for plaintiffs.

Vincent J. Horn, Stanley K. Hathaway and Rick A. Thompson, Cheyenne, Wyo., for defendants.

### ORDER GRANTING MOTION FOR ATTORNEY'S FEES

BRIMMER, Chief Judge.

This matter comes before the Court on plaintiffs' motion for attorney's fees. The Court, having reviewed the pleadings and the evidence offered, and being fully advised in the premises, now FINDS and ORDERS as follows:

### Background

This Court entered two consent decrees on January 28, 1986, directing Goshen County and the Sheriff of Goshen County, Darrell Werger, to correct various specified deficiencies in the physical condition of the Goshen County Jail and in the treatment of its inmates. Many of those deficiencies were to have been corrected under the consent decrees filed in *Jenkins v. Werger*, Civ. No. C83–0128 (Decree filed March 14, 1984).

The 1986 consent decrees were apparently complied with for some time, but in 1988 the attorney for plaintiffs was notified that conditions at the jail had deteriorated. After an inspection of the jail in October, 1988, the attorney, Stephen L. Pevar, sent a letter containing a list of 36 violations of the consent decrees to the Goshen County Attorney. Mr. Pevar subsequently filed a motion to reopen this case and to hold Sheriff Werger in contempt of Court for violating the decrees.

In letters dated November 18, 1988 through March 28, 1989, the Goshen County Attorney acknowledged to Mr. Pevar that "genuine problems" existed, and listed the actions taken by Sheriff Werger to remedy those problems. The affidavit of Sheriff Werger also indicates that remedial actions were taken to address the problems raised by Mr. Pevar. On April 17, 1989, plaintiffs moved to dismiss the contempt action, stating that they no longer saw any need to pursue the action, as its goal had been achieved.

Plaintiffs' counsel then moved for attorney's fees pursuant to 42 U.S.C. section 1988. Defendants opposed the motion, arguing that plaintiffs could not be the prevailing parties where there had been no material alteration of the legal relationship of the parties.

## Discussion

The United States Supreme Court has noted with favor that "[s]everal courts have held that, in the context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 USC § 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (citing *Garrity v. Sununu*, 752 F.2d 727, 738–39 (1st Cir.1984); *Bond v. Stanton*, 630 F.2d 1231, 1233 (7th Cir. 1980); *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir.1980); *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 637 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980)). The Court in *Delaware Valley* considered the application of an attorney fee provision contained in the Clean Air Act similar to section 1988. The Court held that, "[g]iven the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies," counsel was entitled to recover fees for work done out of the "context of traditional judicial litigation." *Delaware Valley*, 478 U.S. at 560, 106 S.Ct. at 3096.

In support of its conclusion, the Court cited its earlier opinion in *Webb v. Board of Ed. of Dyer County*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1984), in which the Court held that work must be " 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Delaware Valley*, 478 U.S. at 561, 106 S.Ct. at 3096 (citing *Webb*, 471 U.S. at 243, 105 S.Ct. at 1928). The Court further noted that "application of this standard is left to the discretion of the district court." *Delaware Valley*, 478 U.S. at 561, 106 S.Ct. at 3096 (citing *Webb*, 471 U.S. at 243–44, 105 S.Ct. at 1928–29). The district court's power to award fees is clearly not dependent on "full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980).

The Tenth Circuit has established a test for determination of when a party has prevailed when there has been no adjudication. *Supre v. Ricketts*, 792 F.2d 958, 962 (10th Cir.1986) (citing *J.J. Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1475 (10th Cir.1985).

> The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e. the suit must be a "substantial factor or a significant catalyst" in prompting the defendants to act or cease their behavior. He must also demonstrate that the defendant's conduct in response to the lawsuit was required by the Constitution or federal law, i.e. the defendant's actions must be legally required.

*Supre*, 792 F.2d at 962.

This Court has already held that the second element of the test has been met. The defendant's actions are legally required by the 1986 consent decrees, which were based on the requirements of the Constitution and federal law.

The first element of the test has also been met. It is clear that plaintiffs' motion to reopen this case and hold Sheriff Werger in contempt of court was a substantial factor in prompting the Sheriff to act. When plaintiffs initiated the suit there

were substantial violations of the decree. When plaintiffs moved to dismiss the suit, those violations had either been corrected or defendants had assured that they would be corrected. Given the history of defendants' noncompliance in this case, it is particularly important that plaintiffs be able to conduct reasonable post-judgment monitoring of the Court's decrees. If defendants were permitted to deprive plaintiffs of their reasonable post-judgment monitoring costs by rendering the action moot, the purpose of section 1988—"to insure that private citizens have a meaningful opportunity to vindicate their right protected by the Civil Rights Acts," *Delaware Valley*, 478 U.S. at 559, 106 S.Ct. at 3095—would be defeated. Plaintiffs' lawsuit prompted defendants to take actions that were legally required, thus plaintiffs' attorney is entitled to reasonable attorney fees incurred in bringing the action.

In *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983), the Tenth Circuit set out specific guidelines for district courts to apply in establishing fee awards. The formula is the number of hours reasonably expended multiplied by the reasonable hourly rate. To determine what hours are "reasonably expended," the *Ramos* court distinguished between "raw" time and "billable" time, and it charges attorneys with keeping meticulous, contemporaneous records. *Id.* at 553. Mr. Pevar has submitted somewhat perfunctory records and asserts that he has spent 68.5 hours on this lawsuit.[1] Subtracting "raw" time from that total, this Court has determined that Mr. Pevar is entitled to be reimbursed for 58.5 hours. The *Ramos* court determined that a reasonable hourly rate is the fee rate of the local area. *Id.* at 555. The Cheyenne rate is still $85.00 an hour. Mr. Pevar is thus entitled to Four Thousand Nine Hundred Seventy-two Dollars and Fifty Cents ($4,972.50).

THEREFORE, it is

ORDERED that plaintiffs' motion for attorney's fees be, and the same hereby is, GRANTED in the amount of Four Thou-

sand Nine Hundred Seventy-two Dollars and Fifty Cents ($4,972.50).

---

1. This properly includes the number of hours spent for work done in resolving the fee issue itself. *Love v. Mayor, City of Cheyenne, Wyo.*, 620 F.2d 235, 237 (10th Cir.1980).